[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S POST-JUDGMENT CONTEMPT CITATION DATED JUNE 1, 1998
 History of the Case
This proceeding relates to a petition for dissolution of marriage which was originated by complaint dated August 16, 1988 and returnable September 20, 1988.
The parties were each represented by counsel during the earlier initial proceedings.
On April 20, 1989 the matter came on for hearing before the Honorable Eli Cramer, J.
Incident to the hearing before Cramer, J., on April 20, 1989 a marital settlement agreement was accepted. The agreement consisting of 19 pages in length was prepared by Plaintiff's then counsel.
The notes of the Clerk in the file indicate that at the time of the dissolution hearing the Plaintiff appeared with counsel but that the Defendant at that juncture was pro se.
Category 3 Real Estate of the April 20, 1989 agreement contained the following:
 3. REAL ESTATE
CT Page 13873 The Wife shall be entitled to exclusive possession of the residence located at 1 Adelaide Road, Norwich, Connecticut, until the youngest child, KRISTEN ANN BEERS, turns eighteen (18) years of age or until the Wife's remarriage, or cohabitation with an unrelated male over the age of eighteen (18). Until such time, the residence shall remain in joint names. During this time, the Wife shall be solely responsible for the mortgage and adequate fire and casualty insurance on the premises. The parties shall share equally the costs of all repairs to the property in excess of $250.00. All other repairs and upkeep shall be the Wife's responsibility. Upon the mutual decision and agreement of the parties, or upon the Wife's remarriage or cohabitation with an unrelated male over the age of eighteen (18), or when the youngest child, KRISTEN ANN BEERS, reaches the age of eighteen (18), whichever shall happen first, the property shall be sold at the then fair market value thereof as soon as possible, and upon the sale, the parties shall share equally, fifty-percent (50%) the net available proceeds from the sale. However, Husband has right of first refusal to purchase Wife's share of equity for a fixed price of $25,000.00.
The original complaint indicated that the date of birth for Kristen Ann Beers was March 4, 1981.
The judgment of dissolution dated April 20, 1989 tracks the marital settlement agreement.
On June 8, 1998 the Plaintiff by counsel filed a Post-Judgment Contempt Citation, which citation referenced the April 20, 1989 marital agreement and recited portions thereof, claimed that the Defendant had vacated the subject real estate leaving the same uninhabitable and claiming malicious and willful waste and damage to said residence and failure and neglect by the Defendant to maintain the premises pursuant to the terms of the judgment and that the Defendant failed to pay the mortgage on a regular basis.
The Plaintiff and Defendant appeared before the Court with their respective counsel and witnesses, and were heard by the Court commencing on October 20, 1998 and continuing on October 23, 1998 to a conclusion.
Counsel agreed that the motion for Contempt Post-Judgment of CT Page 13874 the Defendant dated July 27, 1998 was not at this time before the Court the matter receiving the attention of the magistrate. Counsel stipulated that no request for incarceration was being requested concerning the Plaintiff's June 1, 1998 motion, filed June 8, 1998.
The Court makes the following findings of fact.
The witness Kevin E. Bill is a licensed and certified real estate appraiser and holds the designation C.G.A.
He has performed 800+ appraisals of residential and commercial property in Connecticut.
He inspected and appraised the premises known as 1 Adelaide Road, Norwich on August 10, 1998 and opined that the fair market value of the premises was $67,000.00 and was in a fair to poor condition. He testified that the premises suffered from neglect including damage from pets and estimated the cost to repair neglect and water damage to be $25,000.00.
His report indicates interior floors, trim and doors need replacement. See Plaintiff's Exhibit G.
The witness Anthony DelGrosso is a real estate appraiser of 40 years standing and has been licensed by the State of Connecticut for 38 years.
DelGrosso appraised and inspected the premises at 1 Adelaide Road on July 16, 1998.
DelGrosso found a terrible odor on entering the premises resulting from animal urine, stained floors, scratched windows and doors caused by pets.
He found the basement saturated with water.
DelGrosso estimated the cost to repair the neglect and animal damage to be $25,000.00 to bring the value of the residence up to a value of $105,000.00 to $110,000.00 for this location.
According to the witness, the neglect has extended over at least a three-year period.
The witness Mark Sieczkowski is a son-in-law to the Plaintiff CT Page 13875 and Defendant, being married to the former Robin Beers.
The witness resided in the subject premises during the summer of 1997.
He noticed cat and dog urine or feces on the floor of the premises, which were allowed to remain there for periods of three days.
On one occasion this witness took the living room carpet to the dump due to its unpleasant odor.
The witness maintained the lawn at the subject premises during the summer of 1998 for which he was paid $25.00 per cutting.
The witness observed a dumpster on the premises for most of the summer of 1998.
The witness Michael Carchidi is a self-employed painting contractor of 14 years standing.
He inspected the subject premises in June 1998 and found the residence in distress.
He indicated the residence would have to be sanitized before he would perform any work therein.
He observed woodwork damage, floor stains, animal feces in the basement and a bad odor in the residence.
Carchidi's estimate to perform preparatory work, glazing and painting and power wash the premises, interior painting repair to walls and ceilings, refinish kitchen cabinets, repair animal damage exterior repairs, $1,375.00; interior repairs, $6,600.00. See Plaintiff's Exhibit A.
The witness James B. Blair is a licensed real estate appraiser in this state.
Counsel stipulated as to his qualifications.
The witness visited and inspected the subject premises on Adelaide Road. CT Page 13876
The witness noted the close proximity of the premises to a 30 to 50 unit public housing project.
The witness valued the premises in "as is" condition at $75,000.00.
The witness felt that $20,000.00 would be required to put the premises in a proper state of repair for sale, and that if the needed repairs were made, the premises would be valued in the $95,000.00 to $120,000.00 range.
The witness Blair noted the premises in dire need of repairs, especially water damage in the basement. See Defendant's Exhibit 2.
The witness Carol Sears appeared on behalf of her employer Mac's Floor Covering Co., Inc. and provided an estimate for vinyl and carpeting replacement in the subject premises based on area dimensions provided to her by the Plaintiff.
The witness had not inspected the premises.
The estimate totaled $3,867.44. See Plaintiff's Exhibit F.
The witness Daniel Carty is a neighbor of the subject premises and has been for 43 years.
The witness, after the 1989 divorce of the parties, from time to time observed young people on the roof of the subject premises throwing off shingles, hanging on gutters and engaged in drinking.
The witness Arnaldo Arbonies, Jr. is employed by Servicemaster and has been for three years.
Arbonies does estimate work for Servicemaster and visited the premises on June 24, 1998.
Arbonies found that the premises had an odor of cat urine, especially in the floors, and found the overall condition in the residence poor.
The estimate of Servicemaster to sanitize and clean the premises is $1,590.00. See Plaintiff's Exhibit B. CT Page 13877
The witness Irving S. Small owns and operates the company known as Jila Construction. Small engages in all phases of residential remodeling and repair. Small visited and inspected the subject premises and stated he could not tolerate the odor in the interior of the residence.
Smalls' inspection of the condition of the premises caused him to assess the conditions that he found therein due 40% to normal wear and tear and 60% to abuse.
Smalls' estimate to replace interior doors and jams, window sills, counter tops, flooring, roof repairs and gutters to be a total of $10,320.00. See Plaintiff's Exhibit D.
From the testimony of Peter E. Beers, the Court finds that after the April 1989 divorce the Defendant requested repairs to the roof and a new heating system which the Plaintiff paid for.
At the time of the divorce, the subject premises were in a state of good repair.
The subject residence had been purchased by the parties in 1979.
There were no cats in the home when the Plaintiff vacated the same in 1989.
When purchased, the hardwood floors in the home were covered with carpeting.
The Plaintiff did not allow pets in the home while he resided there with the Defendant.
In the early 1980's the Plaintiff caused a drain to be installed in the basement due to a water problem and Plaintiff installed a recreation room in the basement.
The Defendant did not reimburse the Plaintiff for her share of the roof work which totaled $800.00 nor for her share of the new furnace which cost $1,800.00.
On visiting the premises after the same were vacated by the Defendant, he observed animal waste in the basement and cats living in the recreation room ceiling. CT Page 13878
The Plaintiff acknowledged a substantial arrearage due the Defendant which apparently was caused by his breaking his neck, six major operations and becoming disabled.
The Plaintiff is presently paying $250.00 weekly by Social Security intercept.
In early 1997, $18,000.00 went to the Defendant from Social Security.
The Defendant is employed by the U.S. Postal Service.
On one occasion the Plaintiff received a check from the Defendant for $5,000.00.
The Plaintiff, on inspecting the premises, found the kitchen floor stained and a bad odor therefrom and similar conditions in the bathroom.
The witness Sieczkowski observed two dogs in the subject residence with the animals leaving their waste on the floors and as many as five or six cats therein.
From the testimony of the Defendant, the Court finds:
Under the terms of the April 20, 1989 judgment, the Defendant received no alimony. See Category F of the judgment.
Support payments were oftentimes late.
The Defendant borrowed money from a friend to keep the home going; to wit $6,600.00.
The Defendant's mortgage payments since the decree of divorce have reduced the balance due thereon by approximately $10,000.00 to its present balance of approximately $25,000.00.
Annual real estate taxes on the subject premises are approximately $2,400.00.
The Defendant acknowledges damage to the premises by the pets including a Rottweiler dog.
The Defendant vacated the subject premises in April 1998. CT Page 13879
The Defendant has been diagnosed as being affected with acute anxiety and depression, she takes 50 mg of Zoloff daily. It is hard for the Defendant to concentrate.
The $18,000.00 earlier referred to from Social Security was actually payable to the child Kristen.
The child Kristen receives $570.00 monthly from Social Security.
The Defendant had difficulties and problems with the two children issue of the union including court matters.
The Defendant acknowledges that a portion of the problems as to the physical state of the residence is her responsibility.
The Defendant's present earnings from her position with the postal service are approximately $36,000.00 annually.
The Defendant acknowledged the presence of one dog and three cats in the home since 1996.
The measurements used by the representative of Mac's Flooring, which formed the basis of that witness' estimate were provided by the Plaintiff.
Plaintiff acknowledged receipt of $5,000.00 from the Defendant on July 22, 1996, which was used for attorney's fees.
Plaintiff's recent inspection of the premises revealed a stained, smelly kitchen floor and a bathroom floor stained and smelly.
The witness Sieczkowski testified as to the presence of two dogs in the home, that Rottweilers require lots of attention and that the dogs relieved themselves in the home.
This witness observed as many as five or six cats in the residence.
From the testimony of the Defendant the Court finds, and as the file reflects, she was not represented by counsel at the time of the dissolution.
The Defendant received no alimony under the terms of the CT Page 13880 decree.
The support payments were not timely, sometimes being made five months late.
In 1996 the Defendant went to the Bureau of Support when the support arrearage was $25,000.00±.
The Defendant borrowed money to keep the household expenses going.
The Defendant has paid the taxes and insurance on the residence.
The Defendant at one time gave the Plaintiff $300.00 toward repairs.
The mortgage balance is now approximately $24 to $25,000.00.
The sump pump was in the basement at the time of the dissolution.
The Defendant acknowledges damage to the doors in the residence by the cats and saturation of plywood flooring with animal waste.
The Defendant vacated the premises in April 1998.
The Defendant does now receive child support payments on a regular basis.
It is difficult for the Defendant to concentrate and she often lacks motivation.
This child became involved with an older male requiring the child's transfer from parochial school because of that relationship and the Defendant's inability to pay the tuition costs.
The Defendant was required to attend at court for the child.
The Defendant acknowledges responsibility for broken windows, two storm doors, ripped screens, broken glass louvers.
The Defendant is presently residing and living with an CT Page 13881 unrelated male over 18 in Lebanon.
Defendant's position with the Postal Service is part time, 35 hours a week. The Defendant does play billiards one night a week and went to Las Vegas in 1996 at no cost to her.
The Court in company with a representative of the Clerk's Office and counsel for the Plaintiff and Defendant visited and inspected the subject premises on November 5, 1998.
The Court, after carefully viewing the premises, makes the following observations.
The neighborhood consists of modest, generally neat, single-family residences.
There is a housing project nearby.
The grounds of the premises need attention in cutting the lawn and trimming.
There are pleasant foundation plantings.
The structure is a one-story residence, vinyl siding, buff color and dark brown, a fairly large lot.
There is a fenced in area in rear, apparently for pets.
Condition of roof appears good.
Attached garage, overhead door.
Driveway condition fair, macadam.
There is a deteriorated small boat by the side of the garage.
The storm doors in the breeze way are without glass and need replacement.
Admittedly, the interior of the residence needs considerable cleaning and redecorating.
Some interior doors appear in poor condition.
The odor in the residence was noticeable but not extreme. CT Page 13882
Some ceilings are in need of repair or replacement.
The basement has a concrete floor.
The oil-fired furnace appears relatively new.
There are plastic set tubs in the basement and appliances.
No water was observed in the basement.
 Discussion
Mindful of the prior findings of the Court and the wording of Category 3 Real Estate in the Agreement, the following observations are made.
Kristen Ann Beers is now 17 years of age and will be 18 on March 4, 1999.
The Defendant Denise M. Beers has not remarried.
The Defendant has admitted residing with an unrelated male over age 18.
The real estate is still in joint names.
The Defendant has vacated the premises and the premises are uninhabited at this time.
The Defendant has made the requisite mortgage payments and paid the real estate taxes. There has been no evidence that the mortgage was not timely paid.
Under the terms of the agreement, the premises are now to be offered for sale.
After inspecting the premises, the Court acknowledges that they present a distressing appearance.
The Court feels that the problems presented to the Defendant are due to the lack of regular support payments and the staggering arrearage that accrued has in part contributed to the Defendant's ability to properly care for the residence although little excuse can be had for the problems pertaining to the pets. CT Page 13883
The physical emotional problems that beset the Defendant and the problems generated by the children also contributed to the Defendant's inability to properly preserve the residence.
It is the claim of the Plaintiff that the Defendant maliciously committed waste and damage to the premises.
The Court is inclined to the view that the Defendant, at least in part, was overwhelmed by the problems that beset her and became neglectful in her care of the premises.
Clearly, however, the problems with the pets, if for no reason other than sanitation and good health, should not have been allowed to occur or continue.
The Defendant's payment of the mortgage has materially increased the equity in the property.
In addition to the Court's viewing of the premises, the numerous photographs introduced reflect the property's condition. See Plaintiff's Exhibit H.
The Defendant voluntarily vacated the subject premises some time ago.
The Court's findings reflect the testimony of the witness Bill, DelGrosso, Carchidi, Blair, Sears, Arbonies and Small as concerns their valuations and estimates.
The Court, mindful of its viewing of the premises, finds the current value of the residence in its present state to be $75,000.00.
The Court finds that the premises need to be sanitized and the estimate by Arbonies, agent for Servicemaster, appears reasonable, $1,590.00.
The Court finds that the premises require interior repairs and redecorating in order to be reasonably marketable and finds the estimate of Carchidi to the amount of $6,600.00 to be reasonable.
The Court finds that carpeting, in accordance with the testimony of Sears, is necessary to put the premises in a proper CT Page 13884 state to realize the best possible price for the premises and that a portion of that estimate 50% is reasonable, to wit 50% of $3,867.00.
The Court finds that the current state of the subject property is due 60% to wear and tear and 40% to neglect and abuse.
The Court enters the following orders.
The premises shall forthwith be listed for sale at a price agreed upon by the Plaintiff and Defendant.
If the parties cannot agree on the price or the listing agent, each shall name their price and agent and submit the same to mediation.
Mindful that the agreement (3. Real Estate) is silent as concerns the paying of the mortgage after the termination of exclusive occupancy by the Defendant, but mindful also of the voluntary nature of the vacating, the Defendant shall continue to pay the same until the premises are sold.
At the time of closing of title the Defendant shall be reimbursed for one-half of said payments for the period date of vacating to date of sale.
The firm known as Servicemaster shall be engaged to sanitize the premises and the Defendant shall be responsible for the cost thereof
Mindful of the terms of the agreement, the Plaintiff has the option, if he so chooses, to acquire the Defendant's equity for $25,000.00.
The premises may be exposed for sale in as is condition, after the sanitizing.
From the proceeds of sale:
the Defendant shall pay the Plaintiff one-half of the cost of the roof, to wit one-half of $800.00; and one-half of the cost of the furnace, to wit one-half of $1,800.00.
The mortgage debt shall be paid plus any agent's commission CT Page 13885 and attorney's fees incident to the closing.
The Defendant shall be entitled to reimbursement as noted above for one-half of the mortgage payments made during the period stated above.
From the remaining proceeds the Plaintiff shall be entitled to the sum of $5,119.00, representing 60% of the Carchidi-Sears estimate representing abuse.
The remaining proceeds are to be equally apportioned between the Plaintiff and Defendant.
Each party shall be responsible for their counsel fees.
The Court finds that the Defendant has not maliciously committed waste on the premises, but has allowed willful neglect and abuse.
Austin, JTR